FILED
John E. Triplett, Acting Clerk
United States District Court

By MGarcia at 1:13 pm, Jul 22, 2020

# United States District Court
# for the Southern District of Georgia
# Brunswick Division

UNITED STATES OF AMERICA,

v.

SCHELLA HOPE,

    Defendant.

CR 213-016-1

## ORDER

Before the Court is Defendant Schella Hope's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a).  Dkt. No. 209.  For the reasons below, Hope's motion is **GRANTED**.

## BACKGROUND

In November 2013, a jury found Hope guilty of health care fraud, conspiracy to commit health care fraud, aggravated identity theft, money laundering, and money laundering in transactions over $10,000, in violation of 18 U.S.C. §§ 1349, 1347(a), 1028A(a)(1), 1956(a)(1)(A)(i), and 1957(a).  Dkt. No. 170.  She was sentenced to a total term of 192 months' imprisonment with the Bureau of Prisons ("BOP"), followed by three years' supervised release.  Id.

Hope appealed her conviction, and the Eleventh Circuit Court of Appeals affirmed.  Dkt. Nos. 172, 182.  In December 2015, Hope filed a motion to vacate her sentence pursuant to 28 U.S.C. § 2255, dkt. no. 186, which the Court denied, dkt. nos. 196, 198, 199.  Hope also appealed that decision, but the Eleventh Circuit Court

of Appeals dismissed it for want of prosecution. Dkt. Nos. 200, 204. In August 2018, Hope filed a motion for sentence modification/home confinement, dkt. no. 206, which the Court denied, dkt. no. 208. According to the BOP website, Hope is currently incarcerated at Federal Medical Center Carswell in Fort Worth, Texas, with a release date of August 22, 2027.

## LEGAL AUTHORITY

Hope now moves for relief under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018. That statute reads, in pertinent part:

> (c) Modification of an imposed term of imprisonment.—
> The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
>>> (i) extraordinary and compelling reasons warrant such a reduction; . . .

2

>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The Sentencing Guidelines policy statement, U.S.S.G. § 1B1.13, provides that the Court may grant release if:

>(1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
>>(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>(3) The reduction is consistent with this policy statement.

The 18 § U.S.C. 3553(a) factors the Court must consider are

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>(B) to afford adequate deterrence to criminal conduct;
>
>(C) to protect the public from further crimes of the defendant; and
>
>(D) to provide the defendant with needed educational or vocational training, medical care,

>     or other correctional treatment in the most
>     effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

> (A) the applicable category of offense committed by
> the applicable category of defendant as set forth
> in the guidelines . . .

(5) any pertinent policy statement--

> (A) issued by the Sentencing Commission pursuant
> to section 994(a)(2) of title 28, United States
> Code, subject to any amendments made to such policy
> statement by act of Congress (regardless of whether
> such amendments have yet to be incorporated by the
> Sentencing Commission into amendments issued under
> section 994(p) of title 28); and

> (B) that, except as provided in section 3742(g),
> is in effect on the date the defendant is
> sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Hope avers that she has exhausted her administrative remedies with the BOP, and the Government concedes the same. Dkt. No. 222 at 1.

**II.   Extraordinary and Compelling Reason**

In application note 1 to the policy statement, § 1B1.13, the Sentencing Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. See United States v. Wilkes, 464 F.3d 1240, 1245 (11th Cir. 2006) ("Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." (internal quotation marks omitted)). The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>   (A) Medical Condition of the Defendant.—
>
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii) The defendant is—

5

>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>>
>>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) Family Circumstances.—
>
>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

>   (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The Court finds that Hope has not shown extraordinary and compelling reasons under § 1B1.13 application note 1, subparts (B)-(D). Hope has not reached the age of sixty-five to qualify under subpart (B).  While Hope has an elderly mother for whom she would like to provide care, an aging parent does not qualify as an extraordinary and compelling reason under subpart (C), which discusses care for only minor child(ren) and spouses. As for subpart (D), "other reasons," this District has held that section is reserved to the discretion of the BOP and not the Court.  See United States v. Willingham, No. CR 113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019).  Accordingly, if Hope qualifies for an extraordinary and compelling reason, it must be under subpart (A), "Medical Condition of Defendant."

Subpart A distinguishes between terminal illnesses and other illnesses.  Hope has not alleged that she suffers from a terminal illness.  Rather, Hope's allegations fall under the "serious physical or medical condition" category, subpart (A)(ii)(I).  To qualify for compassionate release, Hope must demonstrate that her medical condition "substantially diminishes [her] ability . . . to

7

provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover."

For this analysis, the Court finds helpful BOP Program Statement 5050.50 ("Program Statement"), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The Program Statement provides:

> [Reduction in Sentence] consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:
>
> • Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
>
> • Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

Now the Court turns to Hope's medical records. She has been diagnosed with advanced deforming Rheumatoid Arthritis, an autoimmune disease that can cause joint pain and damage throughout the body. She also has been diagnosed with secondary Sjogrens Syndrome, an immune system disorder which causes dry eyes and mouth. As a result of those conditions, her finger and feet flexion are deformed; she has limited range of motion in her elbows; she has swelling in her wrists; and tenderness in her knees. Hope takes immunosuppressive drugs to treat those conditions; those same drugs reduce her body's ability to fight infections. Hope has also been diagnosed with asthma, moderate

8

multilevel facet degeneration with foraminal stenosis, degenerative bone marrow edema, and disc protrusions. Hope has been placed on physical restrictions, including no lifting over fifteen pounds due to hand and elbow deformities and weak grip. She can do only sedentary work to include no repetitive use of hands; she cannot do outdoor work or sleep in an upper bunk; and she must go to the bathroom frequently. These physical restrictions are considered "level 3" or "permanent." The Comprehensive Care doctor cleared Hope for home confinement, but, according to Hope, the BOP rejected this suggestion.

While Hope is not wheelchair bound, she asserts that her treating Rheumatologist recommended that she refuse usage of a wheelchair and walker "to inhibit progression of her illness." Dkt. No. 211 at 2. In other words, if Hope stops trying to walk on her own, her Rheumatoid Arthritis will advance. Hope's effort to control her Sjogrens Syndrome symptoms by controlling her body temperature is restricted within the prison. Hope complains of at least two incidents during which she suffered injury as a result of complications from her condition. Hope's argument that her medication monitoring and regular check-ups of serious medical conditions are inconsistent is supported by her medical records. For example, Hope asserts that when she was fifty years old, she had polyps removed from her colon, and the doctor recommended she undergo a colonoscopy in three-year intervals to monitor her

9

condition. At the time she wrote the motion at issue, she was fifty-four years old, and she had yet to undergo another colonoscopy.

While any one of Hope's health conditions, on its own, might not qualify as "a serious physical or medical condition," the Court is satisfied that the constellation of medical conditions from which she suffers, especially during the COVID-19 pandemic, does constitute a serious physical and medical condition. Indeed, the Government concedes that, during the COVID-19 pandemic, Hope's chronic medical condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Dkt. No. 222 ¶ 3 (citing the Department of Justice's refined position on compassionate release); see also U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). More specifically, the Government concedes that Hope's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by her chronic medical condition and sets forth an "extraordinary and compelling" reason for purposes of 18 U.S.C. § 3582(c). After a thorough reading of Hope's motion (as amended), medical records, and letters from her counselors, as well as the Government's briefs and supporting documents, the Court concludes that Hope's medical

conditions, together with COVID-19, qualify as an extraordinary and compelling reason for compassionate release under § 3582(c).

### III. Title 18 U.S.C. §§ 3142(g) and 3553 Factors

Having found that Hope has shown an extraordinary and compelling reason for compassionate release, the Court must now examine the factors set forth in 18 U.S.C. §§ 3142(g) and 3553(a).

With regard to the § 3142(g) analysis, the Government urges the Court to use its discretion to decline to grant Hope's motion because she is a danger to society. Dkt. No. 219 at 17. The Government notes that Hope engaged in a large Medicaid fraud scheme, testified untruthfully at trial, and engaged in questionable witness tampering. After her conviction, Hope was released on bond, yet she violated her conditions such that bond was revoked. Nevertheless, the Court varied below the Guidelines at sentencing. The Government argues these factors, and others, weigh in favor of denying Hope's release.

With regard to the § 3553 factors, the Government urges the Court to find Hope has not met her burden to show she qualifies for compassionate release. More specifically, the Government contends that Hope must demonstrate that the BOP's COVID-19 plan is inadequate or that FMC Carswell is specifically unable to adequately treat her. See Dkt. No. 222 at 1.

While it is true that Hope, as the movant, has the burden to show circumstances meeting the test for compassionate release, the

11

Court finds she has done so. Hope is indeed uniquely inclined, because of her qualifying medical conditions, to be adversely affected by COVID-19 such that early release is warranted. See § 3553(a)(2)(D). In its status report dated June 24, 2020, zero inmates and one staff member at Hope's facility had tested positive for COVID-19. Dkt. No. 222 at 3. In its July 6, 2020 status report, the Government updated those figures to forty-five inmates and one staff member who had tested positive at Hope's facility. Dkt. No. 226. A visit to the BOP's website[1] on July 22, 2020 shows 510 inmates and three staff members have now tested positive at Hope's facility. As the Court mentioned previously, Hope's medical records support her contention that monitoring of her medical conditions is irregular. Hope has injured herself on at least two occasions when she was unable to control her body movements. Her Rheumatoid Arthritis will only progress, and her body is further compromised by the immunosuppressants which have been prescribed to her. Under these circumstances, and in light of COVID-19, the Court finds that Hope would be provided with better medical care inside a private home rather than a BOP facility.

To be sure, Hope's Medicaid fraud scheme resulted in a substantial financial loss to the victims.[2] Nevertheless, at sentencing, Hope had a criminal history score of zero; her entire

---

[1] See Fed. Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/.
[2] The Government provided notice of the evidentiary hearing to the victims via email and/or letter on May 18, 2020. Dkt. No. 225; see also 18 U.S.C. § 3771 (crime victims' rights).

12

criminal history included one arrest for writing a bad check, for which an information was never filed, and several speeding tickets. Hope has shown no history of violence. While it is certainly true that Hope's offenses of conviction resulted in significant financial loss, the Court is satisfied that the time Hope has served in prison reflects the seriousness of Hope's offense and will deter her from any future criminal activity.

Moreover, Hope has demonstrated exemplary behavior while incarcerated and received recognition for being the third-best behaved inmate in her facility. Notably, she helped create a class to discuss recidivism with her peers in an effort to prevent their return to prison after being released. Hope's Correctional Counselor notes that she is paying toward her restitution as agreed. The Court has no reason to believe that Hope would be less able to pay toward her restitution once she is released. In summary, the Court concludes that Hope is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), and that the 18 U.S.C. § 3553 factors weigh in favor of her early release from BOP custody. The significant time she has already spent in prison reflects the seriousness of her crime, promotes respect for the law and provides just punishment for the offense. Both general and specific deterrence have been afforded through Hope's already lengthy prison sentence.

## CONCLUSION

For the reasons above, Hope's motion for compassionate release, dkt. no. 209, is **GRANTED**. Hope's imprisonment sentence is hereby reduced to time served. The BOP is directed to release Schella Hope to begin serving her term of supervised release after a fourteen-day quarantine period and medical clearance from the BOP. The Court is amenable to Hope serving supervised release in Bentonia, Mississippi, where her mother resides, under the condition that the United States Probation Office finds such residency acceptable upon completion of a pre-release investigation. Hope shall not be released from BOP custody until a suitable residency is acquired. The Clerk is **DIRECTED** to serve a copy of this Order on the U.S. Probation Office, as well as the BOP, at FMC Carswell, Naval Air Station, J Street, Building 3000, Forth Worth, Texas 76127.

**SO ORDERED**, this 22nd day of July, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA